In the matter of a contested election before the Senate of the State, between Hugh Waddell, contestant, and John Berry, the returned member, the following resolutions were adopted by the Senate and the following response made by the Supreme Court through the Chief Justice:
SENATE, 17 January, 1849.
Whereas there is a contested election depending before the Senate, in which the following questions of a constitutional character arise, on the making a correct determination of which the Senate feel great difficulty: Therefore,
Be it Resolved, That the said questions be respectfully submitted to the Supreme Court for their consideration, with a request that the said Court would furnish the Senate, as soon as practicable, their opinion on the same, viz.:
Question 1. Is, or is not, the vote of a bargainor in a deed of trust legal?
Question 2. Is, or is not, the vote of a trustee under a deed of trust legal?
Question 3. Is, or is not, the vote of a cestui que trust legal?
CALVIN GRAVES, S. S.
A true copy from the Journal of the Senate.
 H. W. MILLER, Clerk of the Senate.
Communication from Chief Justice Ruffin in reply to a resolution of the Senate:
RALEIGH, 18 January, 1849.
SIR: — The resolution of the Senate, passed on 17 instant, requesting the judges of the Supreme Court to furnish the Senate with their opinions on certain questions therein mentioned, touching the qualifications of persons to vote for members of the Senate, under the Constitution of this State, was laid before the judges on the evening of yesterday.
Although not strictly an act of official obligation which could not be declined, yet from the nature of the questions, and the purpose to which the answers are to be applied — being somewhat of a judicial character — the judges have deemed it a duty of courtesy and respect to the Senate to consider the points submitted to them and to give their opinions thereon. I am, accordingly, directed to communicate it.
Three questions are proposed, which are thus expressed:
"First. Is, or is not, the vote of a bargainor in a deed of trust legal? *Page 306 
"Second. Is, or is not, the vote of a trustee under a deed of trust legal?
"Third. Is, or is not, the vote of a cestui que trust legal?"
It is to be premised that categorical answers to these inquiries could not be useful to the Senate, for want of the precision in the terms of the questions themselves which is usual and requisite in legal discussions; for neither the subject of the conveyance, nor the nature of the trusts, nor the estates of the bargainor and bargainee are specified. But referring to the nature of the controversy before the Senate, as stated in the resolution, it is supposed that the case to which the Senate alludes is of this kind: That one entitled to at least 50 acres of land, for life or some greater estate, conveys it by deed of bargain and sale to a trustee to secure debts to other persons, with a power to the trustee to sell the estate and out of the proceeds to pay the debts. Then, supposing the proper residences of the parties, the points are, whether the bargainor, the bargainee, or the creditor, and, if either, which of them, hath a right to vote for a member of the Senate.
The judges would have been gratified to have heard, before forming their opinion, an argument on the part of the gentlemen concerned on opposite sides; and if the matter of law involved in the questions of the senate were deemed by them doubtful, they would have been obliged to defer their answer until the parties or their counsel could submit their views. But as the judges, upon conference, have found that their opinions entirely concur, and that no one of them entertains a serious doubt upon the subject, they have felt safe, and that it was proper, to deliver their opinion at once, in order to remove the difficulty felt by the Senate in determining the pending contest, as far as their opinion can contribute to that end.
The questions depend entirely upon the proper construction of the second clause of the third section of the first article of the amendments to the Constitution of the State. It is, that "all freemen (except free negroes, etc.) who have been inhabitants of any one district within the State twelve months immediately preceding the day of any election, and possessed of a freehold within the same district of 50 acres of land for six months next before and at the day of election, shall be entitled to vote for a member of the Senate." This language is precise and positive, that the right to vote belongs only to him who is possessed of a freehold. The first inquiry, then, naturally is, What is a freehold, and who is a freeholder, within the meaning of the Constitution?
The term "freehold" is a legal one, of very ancient use and of known signification in the common law. It means an estate in land of which a freeman is seized for the term of his own life, or the life of another, at the least. In its proper sense, it is restricted to such an estate at law. In reference to private rights, it is always used in pleadings and statutes *Page 307 
as applicable to legal rights and to legal rights only. It has likewise been used in the same sense in reference to the qualifications of voters. Long before the settlement of the colony of North Carolina, the right of voting for a member of Parliament was limited, by an ancient statute of England, to "freeholders." A conclusive proof that a freeholder, as meant in that statute, was, as at common law, one who had the legal estate in himself, is furnished by the facts that it required a subsequent statute in that country to enable a mortgagor of a freehold estate, continuing in possession, to vote, and another to disable the mortgagee from voting, when he is not in the actual possession of the mortgaged premises or in the pernancy of the profits. So, by an act passed in 1760, by our Colonial Legislature, substantially following a previous one of 1743, it was thought necessary or useful to define the term "freeholder" as descriptive of one entitled to vote for Representatives; and therein it was provided that a person who bona fide hath an estate real for his own life or the life of another, or an estate of greater dignity, of a sufficient number of acres of land, should be accounted a "freeholder" and entitled as such to vote; and in a subsequent clause it was further enacted that the voter must be possessed of a freehold within the meaning of that act — that is, anestate real for life at least — "in 50 acres of land." It is thus easy to see whence the framers of the Constitution, in 1776, and in 1835, derived the notion of the particular qualification of a freehold, and also the terms of its description. Certainly, the settled sense of the word "freehold," as a term of the law descriptive of an estate in land, and in like manner as descriptive of a property qualification of voters, both in the mother country and in this colony, is that in which it must be received when used in the Constitution when prescribing such a qualification for voters.
It may be thought by some persons that in favor of the elective franchise the Constitution should receive an equitable interpretation, enlarging the term "freehold" so as to embrace, also, what is called an "equitable freehold." But that instrument is to be fairly construed and received according to the plain and popular import of its language generally, or according to their legal sense when it uses technical legal terms. It is not to be crippled by a rigorous adherence to the letter, on the one hand, nor stretched out of bounds on the other, by a latitudinous construction of words of definite and well-known signification. The very fact of requiring a property qualification repels all attempts to fritter it away upon a plea of favor to the citizen. The Constitution forbids any such favor by the plain implication that such a qualification is deemed indispensably requisite to the security of the citizens or the stability of the Government; and its provisions in this respect ought no more to be enlarged than restricted by construction. Now, "freehold" and "freeholder" *Page 308 
are terms of art, of the definite signification in the law, hitherto mentioned, and therefore they ought so to be understood. It is true that writers on that peculiar branch of our jurisprudence which is called equity, in contradistinction to the common or statute laws, and also chancellors, sometimes use the expression "equitable freeholder." But in thus using it they speak, not in a literal, but a figurative sense. They do not mean that there really is a freehold in equity, but only that one who, in the view of a court of equity, is entitled in presenti to the profits of land for life, of which another is seized, is to be regarded in that court, to many purposes, as if he were seized of the land, instead of being entitled to the use and profits merely. But that refers solely to the beneficial rights of property in equity, in respect to the enjoyment, disposition, and transmission of the use by descent, or the like, and not at all to legal rights or political privileges. To such rights and privileges the clause in the Constitution relates, and its terms cannot therefore be controlled by any peculiar sense in which a chancellor might figuratively use them in reference to certain equitable interests which, in some respects, have a similitude to freeholds in land, but are not really freeholds.
The foregoing considerations have so much weight in establishing the proposition that a bargainor in such a deed of trust as that supposed, or a mortgagor, is not entitled to vote for a member of the Senate, that the judges would entertain that opinion on those grounds, were there nothing else bearing on the point. But there are various other reasons, arising out of the purposes of the provision in the Constitution, and from the nature of such trusts and the rights of mortgagors, which strongly tend to the same result. Undoubtedly the object in requiring the freehold qualification was to constitute one branch of the Legislature peculiarly the guardian of property by having it chosen by the owners of property. To answer that end, the ownership of the property ought to be bona fide and substantial, and not colorable and covinous, or nominal merely. Then, it is to be observed that debtors frequently mortgage their estates, or convey them in trust, as a security for debts to a greater amount than the value of the land. In those cases they have such interests in the equity of redemption or resulting trust that, while they continue in the possession and enjoyment of the land, they may be called "the equitable freeholders" in the court of chancery, though their estates, or, rather, interests, are really of no value. It would be a gross abuse of the Constitution for such persons to vote, as they have neither a legal nor beneficial property. That might, indeed, be otherwise if the Constitution required a freehold of a particular value. In that case, possibly, the value of the land above the encumbrance might be deemed or declared to be the measure of the equitable freehold, as it is called. But *Page 309 
there can be no such discrimination in this State. No act of the Legislature can add to the qualifications for voting or take anything away. No law can now declare what is a freehold, so as to make it different from that described and meant in the Constitution. As, therefore, debtors who convey their estates in mortgage or in trust to secure more than their value cannot, in any just sense or by any intelligent and upright tribunal, be deemed freeholders, to the purposes of the Constitution, and as there is no power to create a distinction between such mortgages and deeds of trust and those in which the debts are less than the value of the estate, it appears to follow necessarily that no mortgagor or bargainor in a deed of trust of that kind is competent to vote; for, as all cannot be admitted at the polls, none can, since they all have rights of the same nature, though of different values in the market, and the Constitution refers exclusively to the quantity of the land and the nature of the estate in it, without regard to value in any case.
Moreover, if persons claiming equitable interests under express reservations or declarations of trust were entitled to vote, so, in like manner, would those entitled by way of resulting or implied trusts. Thus, upon a contract for the purchase of a freehold, the vendor before a conveyance becomes a trustee for the vendee, and the latter the equitable owner of the land, provided he has paid the purchase money or performed the contract on his part. But it seems quite clear that it was not contemplated in the Constitution to make such nice and doubtful equities as often arise out of such dealings, the subject of controversy at the polls, to be decided by the judges of the election. On the contrary, it was proper that the title to the vote should be defined clearly and rendered simple, so that the rights and duties of the citizen could be easily understood and readily determined. By viewing the Constitution in the legal and obvious sense of its language, the right to vote is thus defined, and vested in the owner of the land for life — "the freeholder" — in possession.
The conclusion of the judges is, and they are all of opinion, that the bargainor in such a deed of trust as that supposed is not entitled to vote for a member of the Senate, in virtue of any trust or interest in the land or in the surplus of its proceeds, after payment of the debts, reserved or resulting to him.
It follows that a creditor secured by such a deed cannot, as a cestuique trust, vote for a Senator; for he has neither a legal nor an equitable right to the land, but only a right to have his debt raised out of it. Indeed, if a conveyance be made to one upon an express and pure trust for another for life, or any greater interest, the reasons already adduced upon the first point satisfy the judges that the cestui que trust is not *Page 310 
entitled to vote; because, in their opinion, merely equitable interests are not within the purview of the Constitution at all, but proper freeholds only.
Upon the remaining question as framed, namely, whether the bargainee or trustee in such a deed be entitled to vote, the opinion of the judges is likewise in the negative. Such a person is a freeholder; and if that by itself would suffice, he would be entitled to vote. But by the words of the Constitution, one must not only have a freehold, but be "possessed" of it. That is a material and, indeed, essential part of the provision. In legal language, "possessed" is not the appropriate term to describe the quantity of an estate as being a freehold. Technically, he who has a freehold is said to be "seized," and we know thereby that he is fully vested of the estate. "Possessed," then, when applied to a freehold, means something more than the party is seized for life; for such seizin is implied in the term "freehold," by itself. It can therefore only mean that the person must be in possession of the land as his freehold. "Possessed" is therefore very properly applied to the term "freehold" in the Constitution — not as denoting merely that a person hath a lawful right to the land, but, further, that he is in the actual enjoyment by possession or perception of the profits, or, at least, that no one else is.
As has been already remarked, the policy of the Constitution is that voters for members of the Senate should have a substantial interest in the country in the form of a freehold in at least 50 acres of land. Now, there may be such a freehold which gives no beneficial interest to the freeholder, in whom the estate was vested for the use and benefit of another entirely. It is manifest that such a freeholder does not stand in such a relation to the property and the country as affords a reasonable expectation that he will exercise the elective franchise upon the motives and to the ends for which the property qualification is required. A mere mortgagee, that is, one not in possession, has the estate barely as a security for a sum of money; and a trustee in the like condition holds the title exclusively for the benefit of others. It often happens that the legal estate is outstanding in the trustee long after the debts are paid or other trusts are satisfied; in which case the trustee cannot rightfully enter for any purpose, but is bound to reconvey the land upon request. If such a trustee were allowed to vote, it would plainly violate the policy and meaning of the Constitution, and, not less, its language. If, however, a mortgagee take actual possession by himself or his lesses, he becomes thereby a freeholder in possession. Indeed, he has a substantial interest, as well as the estate, and is in fact enjoying it, and therefore his right to vote is unquestionable. It is not so obvious that a trustee in a deed to secure debts to others is within the fair sense of the Constitution, though he take possession; and it can hardly be doubted that were *Page 311 
the Constitution such an instrument as deals in details, such a trustee would have been expressly excluded, or, had the case occurred to the Convention, that to the words "possessed of a freehold" would have been added "to his own use," or some provision of similar import. But the Constitution, in fact, contains no such qualification upon the right of the freeholder in possession to vote; and therefore, though not plainly within the reason of the Constitution, a trustee who is in possession of the actual receipt of the profits, though not to his own use, is fully within the express words of the provision in the Constitution as it is, and consequently he must be admitted to his vote. For there is no authority for a judicial or legislative interpolation of an exception that the person must be "possessed to his own use," when the Constitution is not thus qualified, but is expressed in language, not in itself of doubtful import, but having a clear and settled sense.
The question of the Senate has no reference to the possession of the land by the trustee; and it must, therefore, be understood as referring to the right of a trustee to vote by force, merely, of the conveyance to him, vesting the legal freehold in him. Thus understood, the answer of the judges to it is, that in their opinion such a trustee is not entitled to vote.
But, at the same time, they deem it their duty to say, further, that they are likewise of opinion that if a mortgagee go into possession of the mortgaged premises or receive the profits, or if a trustee in such a deed as that all along supposed actually enter into possession or take the profits for the requisite period, then the former, undoubtedly, and, in the opinion of the judges, the latter also, is entitled to a vote for a member of the Senate.
It will be observed that the effect of these answers is that, except when the trustee is in possession, neither the bargainor nor the trustee can be allowed to vote; and it may possibly occur to the minds of some as an objection to the principles laid down, that the land is thereby excluded from representation altogether, and, in so doing, that the Constitution is disregarded. But the objection, though it may at first appear plausible, has no real force. For the land is in no case represented. The right is in the owner. It is true, the right is conferred on him in respect of the land. But it is only for the security of his rights and interests as a citizen and owner of land; and he is not obliged by the Constitution to vote, or, after once acquiring the right to vote, not to part from it. The truth is, that there is a great deal of land on which no one votes or can vote: as, for example, that belonging to single women and infants, and to persons residing in a different district from that in which the land lies. So, if one conveys his land in such a manner as not to leave in himself a "freehold," he, of course, parts with his right to vote, though he *Page 312 
continue to occupy the land. But it does not follow that by depriving himself of that right, he transfers it to the alienee of the freehold; for, while the former owner cannot vote, for the want of the freehold, the new owner does not become entitled to vote by having the "freehold," unless he also become "possessed" of it. There is, consequently, no inconsistency in holding that neither of them is entitled when the trustee is not in possession either actually or by receipt of the profits.
I am, sir, with very great respect,
Your most obedient servant,
THOMAS RUFFIN.
To the HON. CALVIN GRAVES,
Speaker of the Senate.
Cited: Gill v. Comrs., 160 N.C. 761.
 *Page 1